1. The supplemental certificates with respect to statement of counsel at the hearing, and certified by the trial judge more than twenty days after service of the bill of exceptions, can not be considered by this court, since they do not relate to any omitted "material evidence," and were not certified in the required time, so as to fall within the exception of the Code, § 6-810(1), to the general rule that, after signing the original certificate on a bill of exceptions, the judge is without power to make another certificate.
2. A permanent injunction should not be granted at an interlocutory hearing.
(a) Nor should a final decree be entered at such a hearing held during the first term, in the absence of a consent of the parties entered on the *Page 510 
docket as required by the act of 1935 (Ga. L. 1935, pp. 481, 482; Ann. Code, § 81-1003).
(b) The present hearing by the judge, at the first term, out of the county where the suit for injunction involving the custody of a child was pending, and heard only on affidavits, must be treated as interlocutory.
3. Under the Code, superior-court judges are empowered to determine the custody of minor children both pending suits granting a divorce or suits granting alimony without a divorce and thereafter.
4. After acquiring equitable jurisdiction under the equitable averments and prayers of the petition, the court would retain jurisdiction to settle all related matters made by the pleadings, including the custody of the child. But the court was without authority at the interlocutory hearing to make any final award of custody.
5. Where, upon a fast writ of error, an award of the custody of a child has a direct bearing on the grant or refusal of an interlocutory injunction, this court will consider the ruling made as to custody.
6. In exercising a sound discretion as to the custody of a child, the court must look primarily to what is for the best interest, welfare, and happiness of the child.
(a) An award of custody made in a divorce decree is conclusive unless there has been a subsequent change of circumstances materially affecting the child's welfare.
(b) A like rule applies to an award of custody under a foreign divorce decree, especially where the foreign decree itself provides for a different award, either by the same court or a court of another jurisdiction, if such conditions have changed.
7. The answer and cross-petition of the defendant mother, being sufficiently verified by affidavit, was evidence of probative value, sustaining the judgment, which granted her an injunction and the custody of the child.
8. Although conditions before the divorce decree were irrelevant and should have been excluded, the subsequent marriage of the mother and the furnishing of a new happy home environment to the child, previously lacking, were pertinent. Likewise, the alleged strong anti-American sympathies of the naturalized, German-born father, as manifested in his alleged treatment of the child and mother before the divorce, might properly be deemed to have subsequently become more vitally important to the welfare of the child in view of subsequent Congressional legislation acutely affecting the relation of this country and Germany.
9. The overruling of special grounds of demurrer, relating to some irrelevant or otherwise inadmissible matters in the sworn answer, and the admission of such matters in evidence over objection, will not require a reversal of the interlocutory judgment.
10. Although, under the preceding rulings and the evidence, the grant of the injunction and award of custody of the child was not an abuse of discretion, the language of the order should be so modified as to operate only until the final hearing or further order of the court.
 No. 13782. JULY 8, 1941.
Hans P. Kniepkamp, a non-resident, filed in Habersham superior court a sworn petition against his former wife, Pia Olga Richards, now remarried and residing in this State. He prayed for an injunction against her removal of their son of three years out of the jurisdiction of the court, and against her preventing him from having access to the child on such terms and conditions as the court might think proper, having regard for the best interest of the child; and prayed for general relief. He alleged, that, after the separation of the parties in the State of New York, a divorce decree was granted in Florida on July 27, 1940, upon petition of the wife, under which decree the custody of the child was awarded to her until May 31, 1941, and thereafter alternately to the plaintiff and the defendant during each six months until the child reached majority; that, immediately after the divorce, the defendant married her present husband and removed to Clarkesville, Georgia; that during the Christmas holidays, 1940, the plaintiff went there from New York with presents for the child, was allowed to see him about three hours on Christmas day, and denied that right thereafter; that while under the decree the defendant was allowed the custody, it was to the best interest of the child to associate with the plaintiff, in order not to make the changes in custody, provided by the decree, so abrupt as to endanger the child's health and welfare; and that under the facts as alleged, "there is manifest danger that the defendant will remove said child beyond the jurisdiction of [the] court, unless restrained from so doing."
The defendant's answer and cross-petition alleged that during the marriage, the plaintiff claimed that she was inferior, because of his "pure Prussian birth and descent," she having been born and lived in South Germany; that although the plaintiff was "a naturalized American citizen," he "never ceased to state in her presence his contempt for America and everything American;" that "he associated principally with Germans;" that, according to attached newspaper clippings, he was employed by a firm in New York City which, according to a former German consul, "was the New York headquarters of the German Gestapo," which was bombed and in which the plaintiff was injured; that, according to information, the plaintiff at one time in New York State had escaped from a mob which claimed he was a German spy; that during their marriage he was addicted to the heavy use of intoxicating liquors, had *Page 512 
wrecked four automobiles, had allowed the child to remain in a hotel while he was drinking beer at the bar; that he had never shown any real affection for the child, except before others, and had proposed to her the placing of the child, after the Florida divorce, with another family or in an institution; that the plaintiff had little business sense, and constantly lost money and personal property by carelessness and negligence; that he constantly exhibited an ugly and abusive attitude toward her and the child; that he was unfair and niggardly in money matters, and had treated her unfairly, under facts as alleged, with regard to property belonging to her and their financial affairs. She further alleged that she was happily married to Ralph F. Richards of Clarkesville, who had given her and the child affection and care, which they never had while she was married to the plaintiff; that any visit from the plaintiff to the child would cause trouble, unhappiness, and sorrow, and virtually wreck her home; that in the divorce proceedings the plaintiff never asked and was not granted such permission to visit; that the child regards her present husband as a father, never having had a real affectionate father, is entirely devoted to him, and will allow no one else to care for him except herself and her husband's mother, whom he regards as a grandmother; and that the plaintiff "is of peculiar temperament, character, and disposition, . . is blustering and loud speaking;" and "defendant believes and asserts, after her years of association with him, that he is mentally disordered." Other averments of the defendant are indicated in a statement of the grounds of special demurrer to her answer, which follows.
The defendant prayed, that plaintiff be denied the right to visit the child and interfere with her family life "on the pretext of visiting the child;" that the court enjoin him from visiting her home or sending persons there to demand delivery of the child in order that he might visit the child: and that she have such other relief as might be meet and just. By amendment she alleged that it was to the best interest, welfare, and future of the child that she be awarded his sole and exclusive custody, "because of change of circumstances set out in [the] answer;" and she prayed for such an order, with an injunction against the defendant's visiting or seeing the child "except on reasonable notice and in such manner as the court may now fix by order." The answer was verified as follows: *Page 513 
that defendant "has read the foregoing answer, and that the facts therein alleged on information and belief are verily believed to be true, and that the facts alleged upon her own statements are true to the best of her knowledge and belief."
The plaintiff demurred to the answer generally "upon the ground that same sets out no defense to plaintiff's petition;" and to particular paragraphs "upon the grounds that the allegations therein contained are impertinent, immaterial, prejudicial, irrelevant, surplusage, uncertain, vague, and indefinite, [are] mere conclusions of the pleader with no facts to support the same, . . evasive, . . and . . set out no matter of defense to plaintiff's petition." The averments specified as subject to these grounds are: allegations as to plaintiff's claim of superiority by Prussian birth and descent; his warning not to get American ideas of the position of a wife in his family; his failure during marriage to supply suitable clothes to her and the child; his association principally with Germans and employment by an alleged headquarters of the Gestapo, with attached copies of newspaper clippings; the reference to a New York State mob; the averment as to the hotel liquor saloon; loan transactions by the plaintiff with defendant's mother, his failure to repay the same, and his hatred of the mother; quarreling by the plaintiff during marriage, and his absence of real affection; unfair financial dealings with defendant, and plaintiff's permission to others to attach her bank account, and failure to protect her interests therein; his seizure of her personal property, and his conduct toward her in the divorce proceeding; the allegation that he is "a consummate actor," and that "few can realize his character and indifference towards his son and his hatred of defendant;" the allegation that "while the old suit was pending, plaintiff would by like a Romeo; that he usually was in a high temper, and bragged of having been an officer in the Prussian army; that he certainly shouted around the home like one;" the newspaper clippings referred to; the exhibit relating to a former legal action by defendant against plaintiff and Swiss Farms Inc., a concern in which both were financially interested; the exhibit relating to a divorce action, brought in New York State before the Florida decree; a letter from plaintiff to defendant, written before the Florida decree. Plaintiff also demurred to the prayers of the answer, on the grounds that they were not authorized by the allegations, and that all issues were *Page 514 
adjudicated by the Florida decree. There was no demurrer referring to the verification of the answer; and no demurrer to the defendant's averments and prayer relating to the permanent custody of the child.
Process was issued on the petition filed in December, 1940, in Habersham superior court, returnable to the 1st Monday in March, 1941. On December 27, 1940, the judge granted a temporary restraining order in favor of the plaintiff, which provided for a hearing at Gainesville on January 20, 1941. On January 4, this order was so amended as to postpone this hearing until February 15, 1941, because of the inability of the defendant to prepare evidence in time to serve the plaintiff's counsel with copies ten days before the time originally set for the hearing. The order also provided that the child be produced "at said hearing and all hearings of case, to abide by the judgment of the court." The answer was filed on March 12, 1941.
The bill of exceptions recites that in March, 1941, at Gainesville, the case "came on for hearing on the restraining order . . entered in said case on the 27th day of December, 1940, as amended on January 4, 1941, before the . . judge of said court, then and there presiding;" that the grounds of demurrer to the answer were argued, and each and every ground overruled; that "the plaintiff then introduced evidence, the defendant introduced evidence on said hearing," as incorporated in the bill of exceptions; and that the court then entered the following order: "This cause coming on by agreement of all parties to be heard on this day at this place, after introduction of evidence by both plaintiff and defendant, argument of counsel, and consideration of said case, it is ordered and adjudged by the court that sole and exclusive custody of said child . . be and the same is hereby awarded to the defendant . . permanently and continuously from this date. It is further ordered and adjudged by the court that plaintiff be and he is hereby enjoined from visiting said child or seeing it except on three days previous notice, and at intervals not oftener than three months apart, and then for half a day or day and not longer at one time. It is further ordered and adjudged by the court that plaintiff shall make no visitation or seeing of said child about or during the Christmas season of any year."
The plaintiff excepted to the overruling of his demurrer; and *Page 515 
excepted to the judgment as "contrary to law," to "the principles of justice and equity," to "the evidence," and as "without evidence to support it," and "decidedly and strongly against the weight of the evidence." He also excepted to the admission of certain evidence for the defendant, contained in her answer, as impertinent, irrelevant, immaterial, not sufficiently definite, as mere conclusions without facts, and as not stating the name or address of the newspaper referred to, and not connecting plaintiff with the alleged incidents; this evidence being the newspaper clippings referred to in the grounds of special demurrer, and the uncompleted petition for divorce in New York State, so referred to.
At the hearing the evidence consisted solely of affidavits for the plaintiff and the verified answer of the defendant, with attached copies of newspaper clippings and other exhibits referred to above. There was no objection to the admission of the defendant's answer on the ground that it was insufficiently verified. The affidavits for the plaintiff set forth his ability, standing, and character as a citizen and a member of the bar of the State of New York; his good moral character and financial and other fitness to provide a proper home for the child; and denied the material averments of the defendant as to his bad character or misconduct.
The plaintiff also introduced in evidence the final decree of total divorce, granted on July 27, 1940, in Dade County, Florida, which provided: "That the custody of the child of said marriage . . is awarded to the plaintiff until the 1st day of May, 1941, and is then awarded for six months to the defendant, and thereafter, so far as may be practical, each parent shall have alternate sis months custody. That if conditions change and this provision does not meet the needs of the child, his best disposition and welfare shall be open to further order of this court, or, if not within this jurisdiction, shall be open to further order of a court of vicinage."
The two supplemental certificates by the trial judge, after the original certificate on the bill of exceptions, refer to statements and contentions made by counsel for the plaintiff at the hearing.
1. When a judge signs a certificate to a bill of exceptions, he has exhausted his power in that regard, and can *Page 516 
not make a supplemental certificate as to additional matter or in explanation of the bill of exceptions or its certificate, unless the case falls within the exception to this rule provided by the act of 1905 (Ga. L. 1905, p. 84; Code, § 6-810 (1)). Cordray v.Savannah Union Station Co., 134 Ga. 865 (68 S.E. 697);Reynolds Banking Co. v. Beeland, 142 Ga. 242
(82 S.E. 662); Beck Gregg Hardware Co. v. Crum, 127 Ga. 94
(56 S.E. 242). The bill of exceptions, containing a brief of the evidence, having been certified by the judge on April 18, 1941, this court can not consider the matters set forth in two supplemental certificates, thirty days thereafter, for the reason that these matters do not fall within any exception of the statute, permitting a supplemental certificate where "no brief of evidence is made and filed as a part of the record, [and] there [has been] omitted any material evidence, and the judge . . has inadvertently certified [the] bill of exceptions as true," in which event this certified omitted evidence may be considered by the appellate court; and for the additional reason that the supplemental certificates were not made within the required twenty days from the date of service of the bill of exceptions.Marshall v. English-American Loan c. Co., 127 Ga. 376
(56 S.E. 449). Accordingly, the amendments entered to the original certificate, as set forth in the statement of facts, can not be considered as a part of the bill of exceptions.
2. "On the hearing of an application for an interlocutory injunction, the presiding judge should not undertake to finally adjudicate issues of fact, but should pass on such questions only so far as to determine whether the evidence authorizes the grant or refusal of the interlocutory relief;" and if an injunction is granted, it should not be made permanent. Florida Central R.Co. v. Cherokee Sawmill Co., 137 Ga. 815 (6) (74 S.E. 523);Purcell v. Pilgrim, 152 Ga. 61 (108 S.E. 515); Lyon v.Lyon, 103 Ga. 747 (3) (30 S.E. 575); Rodgers v. FirstMutual Building Loan Asso., 179 Ga. 147 (175 S.E. 477); Code, § 55-202.
(a) The trial of all causes for equitable relief, as distinguished from an interlocutory hearing, shall be at the second term after service has been perfected on all the parties. Parties to proceedings for equitable relief may, by consent, dispose of equity causes at the first term, if service has been properly perfected. Code, § 37-1102. Under the act of 1935 (Ga. L. 1935, pp. 481, 482; Ann. *Page 517 
Code, § 81-1003), all cases, whether at law or in equity, may be tried at the first or appearance term, provided the same is ready for trial, upon the consent of the parties, which consent shall be entered upon the docket of the court. Without such consent, thus duly entered, a final decree can not be entered at an interlocutory hearing. Rosenberg v. Wilson, 154 Ga. 625 (2) (115 S.E. 7).
(b) This case arose on a petition by a former husband against his former wife to enjoin her from preventing him from seeing their child during the period in which the custody of the child was awarded by the divorce decree to the mother, and on her answer and cross-petition against the father to enjoin him from visiting the child and to obtain sole and permanent custody of the child. The divorce decree awarded the custody first to the wife for a stated period, then to the husband for six months, and then for the same lengths of time alternately to the wife and husband. After the setting of the present case for interlocutory hearing, it was heard at the appearance term, at chambers, out of the county where the suit was pending, and without other evidence than the sworn pleadings, affidavits, and copies of instruments and court proceedings. No consent by the parties appearing that the hearing should be a final trial, and the restraining order as amended and recitals in the bill of exceptions showing that there was only an interlocutory hearing under evidence appropriate only to such a hearing, the exceptions of the former husband to the adverse judgment will be determined on the basis that the hearing was interlocutory.
3. Under the Code, §§ 30-127, 30-206, 30-213, in all divorce suits, as well as suits for alimony without a divorce, the judges of the superior courts are empowered to determine, not only who shall be entitled to the care and custody of the minor children pending the litigation, but they are empowered to provide for their permanent custody thereafter. Shipps v. Shipps,186 Ga. 494 (198 S.E. 230); Hudgins v. Hudgins, 182 Ga. 493
(2), 494 (185 S.E. 870). Nothing to the contrary was held inKeppel v. Keppel, 92 Ga. 506 (17 S.E. 976), where jurisdiction to award the custody of children was invoked only under the power given by the divorce and alimony statutes to determine custody in such cases, and was denied because the case had terminated without the grant of a divorce. *Page 518 
4. Under the preceding rulings, and since the court had acquired equitable jurisdiction of the parties and the cause by virtue of the equitable averments and prayers, it retained jurisdiction for all related purposes as made by the pleadings. Code, § 37-122; Wimberly v. Ross, 152 Ga. 258 (5) (109 S.E. 500); Mitchell County v. Hudspeth, 151 Ga. 767 (1, a) (108 S.E. 305); Duke v. Duke, 181 Ga. 21, 22
(181 S.E. 161). See 46 C. J. 1249, § 24. At the interlocutory hearing the judge was authorized to decide as to the grant or refusal of an interlocutory injunction, and as to the temporary custody of the child pending the final determination of the cause. However, in the absence of such consent, properly entered, the judge was not authorized to grant a permanent injunction or make a final award of custody. Since the decision under review is not one merely changing the custody of a child, with nothing more, but primarily involves the grant of an injunction in an equitable proceeding, in which custody was only an incident though essential question, and all questions were tried by evidence appropriate only to an interlocutory hearing, it is unnecessary to decide whether a final award of custody could have been made on such evidence and at such a hearing, if the case had involved custody alone.
5. Whether this court will review an award of the custody of a minor child on a fast writ of error under the Code, § 6-903, taken to an order granting an injunction or temporary alimony, depends on whether the right of custody is an essential or material question in a proper determination of such other question. If the award of custody has no direct bearing upon the determination of the other question, no such review of the award can be had. Fulenwider v. Fulenwider, 188 Ga. 856
(5 S.E.2d 20); Thompson v. Thompson, 124 Ga. 874 (53 S.E. 507);Hall v. Hall, 185 Ga. 503, 504 (195 S.E. 731). If, however, as in the instant case, the question as to the proper custody of the child materially affects the other question, such a review may be had. See Horton v. Horton, 170 Ga. 766 (4), 769, 770 (154 S.E. 365); Ingram v. Trustees of MercerUniversity, 102 Ga. 226 (29 S.E. 273); Martin v. Trusteesof Mercer University, 98 Ga. 320 (25 S.E. 522).
6. "In all cases where the custody of any minor child or children is involved between the parents, there shall be no prima facie right to the custody of such child or children in the father, but the *Page 519 
court hearing such issue of custody may exercise its sound discretion, taking into consideration all the circumstances of the case, as to whose custody such child or children shall be awarded, the duty of the court being in all such cases in exercising such discretion to look to and determine solely what is for the best interest of the child or children, and what will best promote their welfare and happiness, and make award accordingly." Code, §§ 74-107, 50-121, 30-127; Pruitt v.Butterfield, 189 Ga. 593 (6 S.E.2d 786); Lockhart v.Lockhart, 173 Ga. 846, 852 (162 S.E. 129).
(a) However, "A decree of divorce in which the custody of a child is awarded to [one of the parents] is conclusive as between the parties to such decree as to the right of [that parent] to the custody of the child, unless a change of circumstances affecting the welfare of the child is shown." Shields v.Bodenhamer, 180 Ga. 122 (178 S.E. 294); Sells v. Sells,172 Ga. 911 (159 S.E. 237).
(b) "A decree of divorce, awarding the custody of the children of the parties, rendered by the court of another State having jurisdiction of the subject-matter and of the parties, shall be given full effect in this State. . . But such decree can not anticipate changes which may occur in the condition of the parents, or in their character and fitness for the care of their children." Brandon v. Brandon, 154 Ga. 661 (3), 666 (115 S.E. 115); 17 Am. Jur. 522, 523, § 688. Accordingly, where, in a proceeding in this State involving the custody of a child, a change is shown in the circumstances of the parties materially affecting the welfare of the child, since the foreign decree, the court in the exercise of a sound discretion may protect such welfare accordingly, the same as where there has been such a change since a decree rendered in this State. See Drake v.Drake, 187 Ga. 423, 429 (1 S.E.2d 573), and cit. Where the mother and child now reside in this State, and where the father filed his petition in a superior court of this State for injunction against the mother, the court would be authorized, if there was competent evidence of a change in the condition of the parties since the decree, materially affecting the child's welfare, to make a new award of custody. Especially would this be true where, as here, the express terms of the Florida decree provided that "the custody of the child of said marriage . . . is awarded to the plaintiff [mother] until the 1st day of May, 1941, and is then awarded for six months to the defendant [father], and thereafter, *Page 520 
so far as may be practical, each parent shall have alternate six months custody," but "that if conditions change and this provision does not meet the needs of the child, his best disposition and welfare shall be open to further order of this court, or, if not within this jurisdiction, shall be open to further order of a court of the vicinage."
7. The evidence at the interlocutory hearing was limited to the sworn pleadings, affidavits, and copies of instruments and court proceedings. The evidence for the defendant consisted of her sworn answer with exhibits. There was no objection to its admission for insufficiency of verification; and there is now merely a contention, under general exceptions to the interlocutory order, that it is not supported by evidence. The affidavit is that the defendant "has read the foregoing answer, and that the facts therein alleged on information and belief are verily believed to be true, and that the facts alleged upon her own statements are true to the best of her knowledge and belief." The answer as thus sworn to was not without probative value, since it showed on its face what facts were alleged on information and what essential facts were alleged as her own statements. The case thus falls within the principle applied inHarper v. Whitehead, 33 Ga. 138 (5). It is to be distinguished from the rule in Byrd v. Prudential InsuranceCo., 182 Ga. 800 (a, b) (187 S.E. 1), and Hone v.Moody, 59 Ga. 731, where the affiant swore to nothing of his own knowledge, and entirely on "information and belief" or "his belief." It is also distinguished from the rule in Landes v.Globe Planter Mfg. Co., 73 Ga. 176, 183; Bailey v.Bailey, 90 Ga. 435 (16 S.E. 90), Sasser v. Olliff,91 Ga. 84 (3) (16 S.E. 312), and Grizzel v. Grizzel,188 Ga. 418 (2), 422 (3 S.E.2d 649), where the affidavit was held insufficient because it in no wise alleged, nor was it ascertainable, which of the essential facts were and which were not within the affiant's knowledge, and thus failed to show that the affiant knew any fact of her own knowledge. See generallyHerring v. State, 119 Ga. 709, 717 (16 S.E. 876);Brinkley v. Bell, 131 Ga. 226 (2) (62 S.E. 67); Bull v.Carpenter, 32 Ga. App. 637, 639 (124 S.E. 381); 1 Am. Jur. 950, 951, §§ 23, 24; 2 C. J. S. 980-982, § 26. Especially will the judgment in favor of the defendant not be reversed, where no question as to the verification was raised in the trial court, or is attempted now to be raised save under the *Page 521 
general exceptions. See, in this connection, Southern Cotton-OilCo. v. Overby, 136 Ga. 69, 70 (70 S.E. 664).
8. Since, on an inquiry as to the custody of a child after a previous divorce decree, only evidence showing a change of conditions would be material, evidence as to former finances, alleged misconduct, or character and temperament, all existing before the decree, ordinarily would be incompetent. The special demurrers attacking such portions of the sworn answer as to facts and conditions subsisting at the time of the decree should have been sustained.
However, the sworn allegation of the answer, setting up that after the Florida divorce decree the mother had married a man who was able to furnish and who was furnishing to the child a happy home environment, which the child had previously lacked, and that the child was thus happily situated with persons devoted to his welfare, was not subject to demurrer as irrelevant. The same rule would obtain with respect to the averments of the mother, that, although the father was a naturalized citizen of the United States, he had retained the strong Prussian sympathies of his birthplace, and evidenced violent un-American antipathies, which he had continuously manifested in his conversations and treatment of the mother and child. Even though these allegations may have related to a situation and condition existing at the time of the original decree, averments and evidence of such facts would not be irrelevant, since a situation that might not then have been deemed of vital importance to the welfare of the child may have become so, in view of subsequent Congressional legislation, of which this court and the trial judge may take judicial notice, acutely affecting the relation of this country and Germany.
9. "In hearings on interlocutory injunction, the rules of evidence are not in all respects as rigidly enforced as on final trials. In such cases the admission of some secondary, hearsay, or opinion evidence will not necessarily require a reversal."State Highway Board v. Baxley, 190 Ga. 292 (2) (9 S.E.2d 266); Southern Cotton-Oil Co. v. Overby, supra; Griffith v.Hapeville, 182 Ga. 333 (4), 337 (185 S.E. 522); SarannahRiver Terminals Co. v. Southern Ry. Co., 148 Ga. 180, 187
(96 S.E. 257). The same principle will apply where the judge may have admitted some irrelevant or hearsay evidence which should have been stricken on special demurrer and objection. In such a case the erroneous overruling of *Page 522 
grounds of special demurrer, attacking averments as to the former husband's misconduct, financial transactions with the defendant, temperament, and habits of sobriety, which were irrelevant as relating to events occurring before the divorce decree, will not necessitate a reversal of the judgment. The same can properly be said of the erroneous failure to sustain the special grounds of demurrer and exceptions, attacking as hearsay averments contained in unidentified attached newspaper clippings, relative to alleged German Gestapo activities, in one of which clippings the name of the plaintiff appeared among the persons injured in a bomb explosion. These alleged events, even though they would be relevant under the rules stated if properly proved, regardless of whether they occurred before or after the divorce decree, which does not clearly appear, were insufficiently alleged and proved, and for that reason should have been excluded as unidentified hearsay.
10. Under the preceding rulings, the judge did not abuse his discretion in granting an interlocutory injunction in favor of the mother and in awarding her the temporary custody of the child. Although the court had no power at the interlocutory hearing to grant a permanent injunction and a permanent award of custody, this does not necessitate a reversal of the judgment, founded as it was upon sufficient valid evidence; except that direction is given that the order be so changed as to be operative only until the final hearing, or the further order of the court, as to both matters. See Oostanaula Mining Co. v.Miller, 145 Ga. 90 (c) (88 S.E. 562); Triumph Ice MachineCo. v. Sandersville Ice Co., 147 Ga. 468 (2) (94 S.E. 576);Southern Cotton-Oil Co. v. Overby, supra.
Judgment affirmed, with direction. All the Justices concur.